IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Pamela Labanderia, | : | |
| Plaintiff | : | Civil Action 2:09-cv-00359 |
| v. | : | Judge Smith |
| Michael J. Astrue, Commissioner of Social Security, | : | Magistrate Judge Abel |
| Defendant | : | |

**ORDER**

This matter is before the Court on the Commissioner's May 3, 2010 objections to Magistrate Judge Abel's April 20, 2010 Report and Recommendation. The Court, having reviewed the record *de novo*, determines that the administrative law judge's decision does not demonstrate that he followed Social Security Ruling 02-2p in making his decision and that this case should be remanded to the Commissioner for further consideration of plaintiff's Labandeira's application for disability benefits consistent with SSR 02-2p. The Court further finds for the reasons set out below that plaintiff's objections to the Report and Recommendation are without merit.

The Commissioner argues that the administrative law judge reasonably evaluated the evidence relating to plaintiff's impairment. The Commissioner maintains that even if the administrative law judge did not cite to SSR02-2p, he acted consistently with it. The administrative law judge explained why Dr. Balaloski's opinion did not merit controlling weight. The Commissioner further argues that the Magistrate Judge

failed to acknowledge the administrative law judge's assessment of plaintiff's credibility. The Commissioner maintains that the administrative law judge, consistent with the regulations and the Ruling, noted that the medical evidence contradicted plaintiff's allegations.

> The Magistrate Judge concluded:
>
> While the administrative law judge may have been right to reject plaintiff's testimony, his decision does not fairly support that rejection. The failure to reference SSR 02-2p and the reliance on Dr. Balaloski's suggestion that there was a psychological/ social component to some of Labandeira's complaints raises the possibility that the administrative law judge did not accept the Ruling's premise that interstitial cystitis is a determinable impairment that may, standing alone, be totally disabling. The Ruling recognizes that there may be a psychological component to interstitial cystitis. It also recognizes that the frequency of urination and other symptoms may make it impossible for the patient to work. The question is whether the diagnosis is supported by objective evidence, which Dr. Balaloski found it was and the administrative law judge found by concluding that plaintiff's interstitial cystitis was a severe impairment, and, if so, the limitations imposed by the impairment. Dr. Balaloski's observations based on a long-term treating relationship, the findings by other treators, the bathroom diary, and Labandeira's testimony are all evidence that must be weighed--in a manner consistent with SSR 02-2p–in determining how frequent and how severe plaintiff's symptoms are. The administrative law judge's decision does not demonstrate that he followed Social Security Ruling 02-2p in making his decision.

Doc. 18 at 15-16. When making a residual functional capacity determination, the decision-maker must consider the impact of interstitial cystitis:

> IC can cause limitation of function. The functions likely to be limited depend on many factors, including urinary frequency and pain. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It also may affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to tolerate extreme heat, humidity, or hazards also may be affected.

> The effects of IC may not be obvious. For example, many people with IC have chronic pelvic pain, which can affect the ability to focus and sustain attention on the task at hand. Nocturia (nighttime urinary frequency) may disrupt sleeping patterns. This can lead to drowsiness and lack of mental clarity during the day. IC also may affect an individual's social functioning. The presence of urinary frequency alone can necessitate trips to the bathroom as often as every 10 to 15 minutes, day and night. Consequently, some individuals with IC essentially may confine themselves to their homes. In assessing RFC, we must consider all of the individual's symptoms in deciding how such symptoms may affect functional capacities.

SSR 02-2p, Sequential Evaluation, ¶ 1. The Magistrate Judge noted that the administrative law judge failed to credit Labandeira's subjective complaints of urinary urgency, frequency and duration required to void her bladder and rejected Dr. Balaloski's opinion that Labandeira was not malingering and that her interstitial cystitis would require her to urinate frequently, perhaps as often as once an hour. The administrative law judge also made no mention of the bathroom logs Labandeira kept at the direction of her physical therapist and treators. Because the administrative law judge failed to evaluate Lanbandeira's interstitial cystitis as required by SSR 02-20p, this case should be remanded.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation. This case is **REMANDED** to the Commissioner for further consideration of plaintiff Labandeira's application for disability benefits consistent with SSR 02-2p.

    /S/ George C. Smith
George C. Smith
United States District Judge